UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL B. SHAMITOFF; SHAMITOFF INDUSTRIES, INC., individual and doing business as SHAMITOY INTERACTIVE; UNIVERSAL INTERACTIVE LLC,<br><br>Plaintiffs,<br><br>v.<br><br>GEOFFREY RICHARDS, Chapter 7 Trustee, ROBERT BROWN, Arbitrator for the American Arbitration Association, and THE AMERICAN ARBITRATION ASSOCIATION,<br><br>Defendants. | No. 2:14-cv-00024-MCE-CKD<br><br>**MEMORANDUM AND ORDER** |

On January 3, 2014, Plaintiffs Joel B. Shamitoff, Shamitoff Industries, Inc., Shamitoy Interactive and Universal Interactive, LLC[1] (collectively referred to as "Plaintiffs" or "Shamitoff" unless otherwise indicated) filed the instant action against Defendants Geoffrey Richards, Chapter 7 Trustee, Robert Brown, Arbitrator for the American Arbitration Association ("AAA") and the AAA itself (collectively "Defendants" unless noted otherwise).

---

[1] According to the Complaint, Joel Shamitoff is the principal for all three business entities named as Plaintiffs.

1

1  Plaintiffs' complaint seeks injunctive relief, and on the same day it was instituted
2  Plaintiffs filed a concurrent Motion for Temporary Restraining Order ("TRO") asking that
3  this Court enjoin the continuation of an arbitration held under the auspices of the AAA
4  with Defendant Robert Brown presiding as arbitrator.  The arbitration commenced on
5  August 12, 2013, and five days of the proceedings had been completed by October of
6  2013.  The final three days of the hearing were continued to November 25, 2013, so that
7  Shamitoff could testify.  After continuing the completion of the arbitration a second time
8  on November 15, 2013, Mr. Brown denied Shamitoff's third request for a continuance on
9  December 27, 2013.  The instant complaint, filed a week later, on January 3, 2014,
10 seeks to stop the final three days of the arbitration which remain scheduled to
11 commence on January 8, 2014.  Defendants filed their opposition to Plaintiffs' request
12 for restraining order on January 5, 2014.  For the reasons set forth below, Plaintiffs'
13 Motion for TRO is DENIED.[2]

## BACKGROUND

In February of 2005, Jacquelynn Namle Bird, together with her then financial advisor, John Lucero, entered into a number of so-called Retail Development Agreements ("RDAs") with Joel Shamitoff.  Under the terms of those RDAs, Bird and Lucero acquired the opportunity to operate shopping mall kiosks that would sell toys, known as Snapables, that were allegedly developed by Shamitoff.[3]  Bird and Lucero jointly signed a total of fourteen RDAs at a cost of some $14,000.00 per kiosk.  Despite numerous promises that the toys were coming from China, no product ever arrived. Shamitoff refused to return Bird's approximate $390,000.00 investment in the kiosks.

---

[2] Because oral argument was not of material assistance, this matter was submitted on the briefs. E.D. Cal. Local Rule 230(g).

[3] According to documentation submitted in connection with Defendants' filings in opposition to the TRO, Snapables are plush toy dolls or animals with removable heads and body parts that permit them to be interchanged with other similar toys in creating dolls or animals with varying appearances.

2

Ms. Bird filed a state court lawsuit against Shamitoff in 2008, seeking damages, inter alia, for fraud and breach of contract. On May 8, 2009, at Shamitoff's request, the Sacramento Superior Court ordered that matter into arbitration pursuant to provisions contained in the RDA agreements which specified that any disputes be resolved through arbitration. On November 10, 2010, the day before the arbitration hearing was scheduled to commence, Lucero and the business he and Bird formed to manage the RDAs, the LB partnership, filed for bankruptcy protection under Chapter 7. Given those pending bankruptcy proceedings, the arbitration was stayed pursuant to 11 U.S.C. § 362. Thereafter, on or about May 24, 2011, Bird and her husband filed their own Chapter 13 bankruptcy proceeding in the Eastern District of California.[4]

Once Bird's bankruptcy proceeding was converted to a Chapter 7 proceeding on or about May 16, 2012, Shamitoff sought to remove the stayed state court action to bankruptcy court. The court-appointed Chapter 7 trustee, Geoffrey Richards, immediately moved to remand the case on grounds that the removal was untimely, and the case was subsequently remanded. Shamitoff argued that the removal had terminated any assignment of the case to arbitration, but the Superior Court disagreed.

In the meantime, on or about April 18, 2012, the Chapter 7 Trustee for the LB Partnership, John Roberts, petitioned the court to sell the assets held by the partnership; namely, the 14 RDAs. Universal Interactive, one of the businesses operated by Joel Shamitoff, purchased the RDAs from the LB Partnership's bankruptcy estate for a total sum of $7,500.00. That sale was approved by United States Bankruptcy Judge Christopher M. Klein by order dated June 5, 2012.

Bird's Chapter 7 bankruptcy trustee ultimately decided to resume efforts to collect from Shamitoff pursuant to her previously filed state court lawsuit that had become an asset of her bankruptcy estate.

///

---

[4] John Lucero had already sought bankruptcy protection on November 2010, at the same time the business entity formed by Lucero and Bird to hold the RDAS, the LB Partnership, also filed for bankruptcy under Chapter 7.

After the AAA determined that the arbitration could resume, Shamitoff filed a motion for preliminary injunction to stay the arbitration, which the Sacramento County Superior Court denied by Minute Order dated April 4, 2012.  That court pointed out that it had no jurisdiction to enjoin the arbitrator in a pending arbitration from resuming the arbitration proceedings.  See Ex. D to Decl. of William L Dunbar in Support of Opp'n to TRO.  Then, on October 5, 2012, Shamitoff moved to dismiss Bird's fraud lawsuit and remove it from arbitration on grounds that his purchase of the RDAs extinguished any cause of action in Bird's favor.  The Sacramento Superior Court again found it had no jurisdiction to stop the arbitration.  Id. at Ex. E.  Shamitoff moved to reconsider that ruling which the court denied as improper, stating it would "not entertain further motions in this case except a motion to confirm, vacate, or correct the arbitration award" under California Code of Civil Procedure § 1285.  Id. at Ex. F.

Apparently undaunted by the above admonition, Shamitoff filed yet another motion for preliminary injunction with the Sacramento Superior Court, which the court summarily denied on grounds it had "already made it abundantly clear in prior rulings that it [had] no jurisdiction to interfere in the AAA proceeding and … would entertain no other motion other than one to confirm, vacate or correct the arbitration award."  Id. at Ex. G.  While the court noted that Shamitoff had obtained a declaratory judgment in a Los Angeles County action that he and his entities owned the RDAs following their bankruptcy sale, and while Shamitoff argues, as he does here, that said judgment removes any basis for the arbitration, the court found it was up to the arbitrator, and not the court, to weigh the effect, if any, of the Los Angeles judgment.  Finally, on July 10, 2013, the same day the court denied Shamitoff's second preliminary injunction request as discussed above, the Court further denied Shamitoff's request to transfer venue of the matter to Orange County.

Perhaps due to a lack of success in Sacramento, Plaintiff and Lucero filed a total of three different actions in Orange County, all in an apparent effort to keep the AAA arbitration from moving forward.

In the first 2010 proceeding, filed by Lucero, the Orange County court denied Lucero's preliminary injunction request, reasoning that any stay issued on its part "would be a direct interference with the jurisdiction of the Sacramento County Superior Court." Id. at Ex. I. Shamitoff himself nonetheless filed two additional lawsuits in Orange County, both requesting similar injunctive relief.

    As indicated above, despite this plethora of attempts to thwart the arbitration from moving forward, the AAA arbitrator, Robert Brown, scheduled the arbitration hearing to begin on August 12, 2013. After five days of testimony and evidence, the arbitrator rescheduled the remainder of the hearing at Shamitoff's request. After continuing the hearing twice, Brown denied Shamitoff's third continuance request, and some five days before the confirmed January 8, 2014 hearing date, Shamitoff instituted the present lawsuit.

    Shamitoff, together with his business entities, allege that the ongoing arbitration proceedings violate their constitutional right to due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, because they seek to improperly seize the RDAs in contravention of the bankruptcy court's approval of their sale. According to Plaintiffs, given that sale, there is nothing to arbitrate and the arbitration proceedings are nothing more than an ill-conceived attempt to recover property they validly purchased. Defendant Richards, in opposing the TRO to stop the arbitration, points out that he has no interest in obtaining the RDAs themselves from Plaintiff, and instead wants to collect money damages from Plaintiffs for fraud because of Shamitoff's alleged misrepresentations about the Snapables project and the resulting RDAs.

///
///
///
///
///

## STANDARD

The purpose of a temporary restraining order is to preserve the status quo pending the complete briefing and thorough consideration contemplated by full proceedings pursuant to a preliminary injunction. See Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 438-39 (1974) (temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer"); see also Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006); Dunn v. Cate, No. CIV 08-873-NVW, 2010 WL 1558562, at *1 (E.D. Cal. April 19, 2010).

Issuance of a temporary restraining order, as a form of preliminary injunctive relief, is an extraordinary remedy, and Plaintiffs have the burden of proving the propriety of such a remedy. See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). In general, the showing required for a temporary restraining order and a preliminary injunction are the same. Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

The party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008); Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter). To grant preliminary injunctive relief, a court must find that "a certain threshold showing is made on each factor." Leiva–Perez v. Holder, 640 F.3d 962, 966 (9th Cir. 2011). The propriety of a TRO hinges on a significant threat of irreparable injury that must be imminent in nature. Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

///
///

Alternatively, under the so-called sliding scale approach, as long as the Plaintiffs demonstrate the requisite likelihood of irreparable harm and show that an injunction is in the public interest, a preliminary injunction can still issue so long as serious questions going to the merits are raised and the balance of hardships tips sharply in Plaintiffs' favor. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-36 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

## ANALYSIS

The dispute underlying this lawsuit has been pending before the Sacramento Superior Court since Jacquelynn Bird filed her fraud lawsuit in 2008. The following year, at Shamitoff's request, the state court ordered this matter to arbitration under the auspices of the AAA. Bankruptcy filings by the various parties connected with the RDAs purchased in 2005 stayed the arbitration procedures, and ever since arbitration proceedings were recommenced by the AAA in 2012, Shamitoff has engaged in a relentless campaign to prevent arbitration from taking place. He has filed two different motions for preliminary injunction. His first motion, filed in April 2012, was made on grounds that the bankruptcy stay should not have been lifted. Second, in July of 2013, Shamitoff again sought preliminary injunctive relief, this time making virtually the same argument he makes here: that Shamitoff's purchase of the RDA's from the LB Partnership bankruptcy estate made any dispute between the parties moot. In both those motions, the state court made it abundantly clear that it had no jurisdiction to interfere with the AAA proceeding and declined to do so. When injunctive relief failed, Shamitoff also tried again, unsuccessfully, to dismiss the action based on the same arguments. Then, Shamitoff filed no less than three similar actions in the Orange County Superior Court all designed to obtain injunctive relief to stop the arbitration on similar grounds.

1    The Court agrees with Defendants that Shamitoff's present filing here amounts to no more than forum shopping. Shamitoff has proffered all the same arguments for injunctive relief before two different state courts without success.

Shamitoff's Complaint on file herein also makes it crystal clear that the purpose of this action is to prohibit the AAA arbitrator, Robert Brown, from proceeding with the arbitration "inasmuch as the issue of ownership of the claim has already been fully adjudicated by the United States Bankruptcy Court (the June 5, 2012 Order) and the Los Angeles Superior Court (the April 23, 2013 Order)." Compl., ¶ 8. As indicated above, Shamitoff's reference to the Bankruptcy Court order is to Judge Klein's approval of the sale of the 14 RDAs themselves to Shamitoff's entity, Universal Interactive LLC. The Los Angeles Superior Court order simply found that Universal Interactive owned the RDAs and that neither Bird, Lucero nor the LB Partnership had standing to enforce or assert any ownership interest. See Pls.' Compl, ¶ 2 c.; see also Ex. L. to the Shamitoff Decl. Shamitoff's arguments with respect to both orders were already presented to, and rejected by, the Sacramento Superior Court.

Shamitoff's present effort to stay the AAA arbitration ordered by the Sacramento Court is precluded by the provisions of the so-called Anti-Injunction Act, 28 U.S.C. § 2283, which states in pertinent part: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." In addition, the Supreme Court has long recognized the importance of federal courts not unduly interfering with, or reviewing, a state court proceeding. See Younger v. Harris, 401 U.S. 37, 43-45 (1971). Deference in this regard has also been invoked by the Ninth Circuit to avoid such second-guessing. See, e.g., Sarausad v. Porter, 503 F.3d 822, 825 (9th Cir. 2007); Brother Records, Inc. v. Jardine, 432 F.3d 939, 944 (9th Cir. 2005).

///

///

With those principles in mind, the Court is of the opinion, at least at this preliminary juncture, that it would be improper for it to revisit the state court rulings already made in this matter. That means this Court cannot, for purposes of the pending request for TRO, determine that there is any likelihood of success on the merits of Shamitoff's claim. Regardless of the formulation used to weigh the propriety of preliminary injunctive relief, the requesting party must show he or she is "likely" to so prevail. Winter, 555 U.S. at 20. Whether by virtue of the bar posed by the Anti-Injunction Act or by general principles of comity between state and federal courts as recognized by Younger and its progeny, Shamitoff appears unlikely to prevail with respect to the relief requested in the present lawsuit.

Shamitoff fares no better with respect to the persuasiveness of his fundamental argument. According to Shamitoff, because he now owns the 14 RDAs initially invested in by Jacquelynn Bird, Bird's lawsuit for fraud in connection with the sale of those RDAs (as well as Shamitoff's subsequent conduct with respect to sale of Snapables toys pursuant to the RDAs), is necessarily moot. As defense counsel's declaration makes clear, however, the Bankruptcy Trustee, in pursuing Bird's fraud lawsuit, "is not seeking possession or title of the [RDAs] or the rights thereunder." Dunbar Decl., ¶ 14. Instead, he seeks "money damages for Shamitoff's fraud in connection with those contracts." Id. It bears noting, as pointed out by defense counsel, that his Pre-Hearing Arbitration brief filed before commencement of the arbitration makes absolutely no reference to any intent to recover the RDAs themselves. Instead, given Shamitoff's repeated alleged misrepresentations about the toys that were supposed to be sold through the RDAs, the RDAs themselves would appear largely worthless, an inference borne out by Shamitoff's purchase for $7,500.00 of an investment in which Bird had expended nearly $400,000.00.

///

///

///

The irreparable harm component of preliminary injunctive relief also appears lacking in this matter. Shamitoff's Motion identified the irreparable harm in this matter as the RDAs in question being "unlawfully seized" when their ownership has already been determined. See Pls.' Mot., ¶ 22. As already stated, the defense is not seeking to get back the RDAs themselves, but instead is suing Shamitoff for fraud. Consequently, the ownership question cannot provide the requisite irreparable harm, despite Shamitoff's argument to the contrary. As set forth above, the propriety of a TRO in particular hinges on a significant threat of irreparable injury that must be imminent in nature. Carribean Marine Serv. Co. v. Baldridge, 844 F.2d at 674. Allowing the conclusion of an arbitration hearing that has already been substantially completed does not pose a sufficient risk of harm under the circumstances of this case.

In sum, Shamitoff has not established either the likelihood of success on the merits or the probability of imminent irreparable harm in this matter. He must demonstrate both in order to qualify for the TRO he requests through this motion. While the Court recognizes that the balance of equities and whether or not an injunction is in the public interest must also be ordinarily addressed in assessing the propriety of preliminary injunctive relief, the fact that Shamitoff has failed to make the required showing on either of the first two factors makes it unnecessary for the court to examine those remaining issues at the present time, and it declines to do so.

///
///
///
///
///
///
///
///

**CONCLUSION**

For all of the foregoing reasons, Plaintiff's Motion for Temporary Restraining Order (ECF No. 1) is DENIED.

IT IS SO ORDERED.

Dated:  January 16, 2014

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT