1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   JOEL B. SHAMITOFF; SHAMITOFF              No.  2:14-cv-00024-MCE-CKD
     INDUSTRIES, INC., individual and
12   doing business as SHAMITOY
     INTERACTIVE; UNIVERSAL
13   INTERACTIVE LLC,                          **MEMORANDUM AND ORDER**

14                     Plaintiffs,

15        v.

16   GEOFFREY RICHARDS, Chapter 7
     Trustee, ROBERT BROWN, Arbitrator
17   for the American Arbitration
     Association, and THE AMERICAN
18   ARBITRATION ASSOCIATION,

19                     Defendants.

20

21        On January 3, 2014, Plaintiffs Joel B. Shamitoff, Shamitoff Industries, Inc.,

22   Shamitoy Interactive and Universal Interactive, LLC[1] (collectively referred to as

23   "Plaintiffs" or "Shamitoff" unless otherwise indicated) filed the instant action against

24   Defendants Geoffrey Richards, Chapter 7 Trustee; Robert Brown, Arbitrator for the

25   American Arbitration Association ("AAA"); and the AAA itself.  Plaintiffs sought, through

26   ///

27   _____

28        [1] According to the Complaint, Joel Shamitoff is the principal for all three business entities named
     as Plaintiffs.

                                          1

1  their Complaint, to enjoin the continuation arbitration proceedings conducted under the

2  auspices of the AAA with Defendant Robert Brown presiding as arbitrator.

3      Plaintiffs initially moved for a temporary restraining order ("TRO") concurrently

4  with the submission of their complaint.  That TRO request was denied by Memorandum

5  and Order filed January 17, 2014.  Defendants AAA and Brown (collectively referred to

6  as the "AAA" unless otherwise indicated) now move to dismiss the claims against them

7  pursuant to Federal Rule of Civil Procedure 12(b), arguing both that the action against

8  them is barred under principles of arbitral immunity and, further, is moot in any event

9  since the arbitration has now been concluded and the award confirmed in state court.

10  For the reasons set forth below, the AAA's Motion is granted.[2]

11

12  **BACKGROUND**

13

14      In February of 2005, Jacquelynn Namle Bird, together with her then financial

15  advisor, John Lucero, entered into a number of so-called Retail Development

16  Agreements ("RDAs") with Joel Shamitoff. Under the terms of those RDAs, Bird and

17  Lucero acquired the opportunity to operate shopping mall kiosks that would sell toys,

18  known as Snapables, that had allegedly been developed by Shamitoff.[3]  Bird and Lucero

19  jointly signed a total of fourteen RDAs at a cost of some $14,000.00 per kiosk.  Despite

20  numerous promises that the toys were coming from China, no product ever arrived.

21  Shamitoff refused to return Bird's approximate $390,000.00 investment in the kiosks.

22      Ms. Bird filed a lawsuit in state court against Shamitoff in 2008, seeking damages,

23  inter alia, for fraud and breach of contract.  On May 8, 2009, at Shamitoff's request, the

24  Sacramento Superior Court ordered that matter into arbitration pursuant to provisions

25
26  [2] Because oral argument was not of material assistance, this matter was submitted on the briefs. E.D. Cal. Local R. 230(g).

27  [3] According to documentation submitted in connection with Defendants' filings in opposition to the TRO, Snapables are plush toy dolls or animals with removable heads and body parts that permit them to
28  be interchanged with other similar toys in creating dolls or animals with varying appearances.

1   contained in the RDA agreements which specified that any disputes be resolved through

2   arbitration. On November 10, 2010, the day before the arbitration hearing was scheduled

3   to commence, Lucero and the business he and Bird formed to manage the RDAs, the LB

4   partnership, filed for bankruptcy protection under Chapter 7. Given those pending

5   bankruptcy proceedings, the arbitration was stayed pursuant to 11 U.S.C. § 362.

6   Thereafter, on or about May 24, 2011, Bird and her husband filed their own Chapter 13

7   bankruptcy proceeding in the Eastern District of California.[4]

8        Once Bird's bankruptcy proceeding was converted to a Chapter 7 proceeding on

9   or about May 16, 2012, Shamitoff sought to remove the stayed state court action to

10   bankruptcy court.  The court-appointed Chapter 7 trustee, Geoffrey Richards,

11   immediately moved to remand the case on grounds that the removal was untimely, and

12   the case was subsequently remanded.  Shamitoff argued that the removal had

13   terminated any assignment of the case to arbitration, but the Superior Court disagreed.

14        In the meantime, on or about April 18, 2012, the Chapter 7 Trustee for the LB

15   Partnership, John Roberts, petitioned the court to sell the assets held by the partnership;

16   namely, the 14 RDAs.  Universal Interactive, one of the businesses operated by Joel

17   Shamitoff, purchased the RDAs from the LB Partnership's bankruptcy estate for a total

18   sum of $7,500.00.  That sale was approved by United States Bankruptcy Judge

19   Christopher M. Klein by order dated June 5, 2012.

20        Bird's Chapter 7 bankruptcy trustee ultimately decided to resume efforts to collect

21   from Shamitoff pursuant to her previously filed state court lawsuit that had become an

22   asset of her bankruptcy estate.  After the AAA determined that the arbitration could

23   resume, Shamitoff filed a motion for preliminary injunction to stay the arbitration, which

24   the Sacramento County Superior Court denied by Minute Order dated April 4, 2012.

25   That court pointed out that it had no jurisdiction to enjoin the arbitrator in a pending

26   arbitration from resuming the arbitration proceedings.  See Ex. D to Decl. of William L.

27        [4] John Lucero had already sought bankruptcy protection on November 2010, at the same time the
business entity formed by Lucero and Bird to hold the RDAS, the LB Partnership, also filed for bankruptcy

28   under Chapter 7.

3

1    Dunbar in Support of Opp'n to TRO, ECF No. 2-1.  Then, on October 5, 2012, Shamitoff

2    moved to dismiss Bird's fraud lawsuit and remove it from arbitration on grounds that his

3    purchase of the RDAs extinguished any cause of action in Bird's favor.  The Sacramento

4    Superior Court again found it had no jurisdiction to stop the arbitration.  Id. at Ex. E.

5    Shamitoff moved to reconsider that ruling which the court denied as improper, stating it

6    would "not entertain further motions in this case except a motion to confirm, vacate, or

7    correct the arbitration award" under California Code of Civil Procedure § 1285.  Id. at Ex.

8    F.

9          Apparently undaunted by the above admonition, Shamitoff filed yet another

10   motion for preliminary injunction with the Sacramento Superior Court, which the court

11   summarily denied on grounds it had "already made it abundantly clear in prior rulings

12   that it [had] no jurisdiction to interfere in the AAA proceeding and . . . would entertain no

13   other motion other than one to confirm, vacate or correct the arbitration award."  Id. at

14   Ex. G.  While the Sacramento Superior Court noted that Shamitoff had obtained a

15   declaratory judgment in a Los Angeles County action that he and his entities owned the

16   RDAs following their bankruptcy sale, and while Shamitoff argued, as he does here, that

17   said judgment removes any basis for the arbitration, the Sacramento Superior Court

18   found it was up to the arbitrator, and not the court, to weigh the effect, if any, of the

19   Los Angeles judgment.  Finally, on July 10, 2013, the same day the court denied

20   Shamitoff's second preliminary injunction request as discussed above, the Sacramento

21   Superior Court further denied Shamitoff's request to transfer venue of the matter to

22   Orange County.

23         Perhaps due to a lack of success in Sacramento, Plaintiffs and Lucero filed a total

24   of three different actions in Orange County, all in an apparent effort to keep the AAA

25   arbitration from moving forward.  In the first 2010 proceeding, filed by Lucero, the

26   Orange County court denied Lucero's preliminary injunction request, reasoning that any

27   stay issued on its part "would be a direct interference with the jurisdiction of the

28   ///

4

1   Sacramento County Superior Court." Id. at Ex. I.  Shamitoff himself nonetheless filed

2   two additional lawsuits in Orange County, both requesting similar injunctive relief.

3          Despite this plethora of attempts to thwart the arbitration from moving forward, the

4   AAA arbitrator, Robert Brown, scheduled the arbitration hearing to begin on August 12,

5   2013.  After five days of testimony and evidence, the arbitrator rescheduled the

6   remainder of the hearing at Shamitoff's request.  After continuing the hearing twice,

7   Brown denied Shamitoff's third continuance request on December 27, 2013.  Plaintiffs

8   instituted the present lawsuit, on January 3, 2014, five days before the AAA arbitration

9   was set to reconvene on January 8, 2014.

10          According to Plaintiffs, the ongoing arbitration proceedings violate their

11   constitutional right to due process, as guaranteed by the Fifth and Fourteenth

12   Amendments to the United States Constitution, because they seek to improperly seize

13   the RDAs in contravention of the bankruptcy court's approval of their sale.  According to

14   Plaintiffs, given that sale, there is nothing to arbitrate and the arbitration proceedings are

15   nothing more than an ill-conceived attempt to recover property Plaintiffs validly

16   purchased, and to saddle Plaintiffs with improper and unnecessary arbitration fees and

17   costs in the process.  In addition to seeking preliminary and permanent injunctive relief

18   that would prevent the AAA and Brown from further "mismanaging" the arbitration

19   proceedings or "failing to follow their own rules," Plaintiffs also request a declaration that

20   Arbitrator Brown has no jurisdiction over Plaintiffs, as well as a declaration that Plaintiffs

21   are the legal owners of the subject RDAs.

22          While Plaintiffs applied for a temporary restraining order at the same time they

23   filed their Complaint, that request was denied on January 17, 2014, on grounds that the

24   so called Anti-Injunction Act, 28 U.S.C. § 2283, prohibits a court, absent special

25   circumstances not applicable here, from enjoining or staying proceedings in a state

26   court.  See Younger v. Harris, 401 U.S. 37, 43-45 (1971).  Given those strictures, the

27   Court found that Plaintiffs lacked any likelihood of success on the merits, a showing they

28   had to make to qualify for preliminary injunctive relief.  Moreover, this Court further

1  rejected, at least for purposes of determining the merits of the matter for purposes of a

2  TRO, Plaintiffs' substantive argument that because they subsequently purchased the

3  RDAs once owned by Jacquelynn Bird, any lawsuit for fraud was necessarily moot.  The

4  Court pointed to the fact that neither possession nor title of the RDAs was being sought

5  by the Bankruptcy Trustee in pursuing Bird's lawsuit.  Instead, the remedy sought was

6  money damages in connection with those contracts, an inference strengthened by the

7  fact that the RDAs themselves were virtually worthless, having been bought by Plaintiffs

8  for some $7,500.00 despite Bird's initial investment of nearly $400,000.00.

9       Events subsequent to the Court's initial denial of the TRO are also significant.  In

10  the wake of that denial, Arbitrator Brown completed the arbitration and, on February 10,

11  2014, issued an award against Plaintiffs, jointly and severally, in the amount of

12  $380,000.00, plus prejudgment interest totaling $164,280.00 (based on 7.0 percent

13  interest per annum for the period between December 1, 2007 and January 31, 2014).

14  Plaintiffs were further  ordered to pay administrative fees and expenses of both the AAA

15  and Arbitrator Brown $22,375.00.  That award was subsequently confirmed by the

16  Sacramento Superior Court on the basis of Judge David I. Brown's Order Confirming

17  Arbitration Award dated May 12, 2014.[5]

18

19                               **STANDARD**

20

21       In addition to the six specific defenses set forth in Rule 12(b) that can be asserted

22  by a pretrial motion to dismiss, case law permits certain other "unenumerated" defenses

23  to be raised through a 12(b) motion.   Immunity is one of the defenses that can be made

24  by such an unenumerated motion.  See Rutter Group, Federal Civil Procedure

25  ///

26       [5] By Supplemental Request for Judicial Notice filed May 19, 2014 (ECF No. 25), Defendants bring
the Sacramento Superior Court's Order to this Court's attention as Exhibit R, and that Order attaches a
27  copy of Arbitrator Brown's February 10, 2014 award.  As set forth below, the February 10, 2014 Order is
properly subject to judicial notice under Federal Rule of Evidence 201, and Defendants' request in that
28  regard has not been opposed.

1   Before Trial, 9:239.10 (2014) (citing Thomas v. Nakatani, 309 F.3d 1203, 1205 (9th Cir.

2   2003)).

3          When permitted, an unenumerated motion to dismiss is governed by the rules

4   applicable to motions generally, as opposed to those limited just to those applicable to

5   Rule 12(b).  This allows the court to consider facts outside the complaint based on

6   affidavits submitted by the parties.  Fed. R. Civ. P. 43; Ritza v. Int'l Longshoremen's &

7   Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988), overruled on other grounds

8   in Albino v. Baca, 747 F.3d 11162 (9th Cir. 2014).  Both parties here have submitted

9   declarations attaching various documents for the Court's consideration.  Those matters

10  may consequently be properly considered in adjudicating this matter.  Moreover, counsel

11  for Defendants has also requested that Exhibits A through R also be judicially noticed

12  under Federal Rule of Evidence 201.  Plaintiffs further have requested that certain

13  documents also be judicially noticed in connection with their opposition.  Neither party

14  has filed any opposition to those various requests and they are granted.

15

16                                    **ANALYSIS**

17          **A.  Arbitral Immunity**

18          In recognizing the doctrine of arbitral immunity, the Ninth Circuit describes

19  applicable case law as dictating that "arbitrators are immune from civil liability for acts

20  within their jurisdiction arising out of their arbitral functions in contractually agreed upon

21  arbitration proceedings."  Wasyl, Inc. v First Boston Corp., 813 F.2d 1579, 1582 (9th Cir.

22  1987).  As the Wasyl court goes on to explain, "[t]he functional comparability of the

23  arbitrator's decision-making process to those of judges and agency hearing examiners,

24  to whom immunity is extended, generates the same need for independent judgment free

25  from the threat of lawsuits.  Id.  Arbitral immunity therefore "protects all acts within the

26  scope of the arbitral process."  Olson v. Nat'l Ass'n of Security Dealers, 85 F.3d 381,

27  383. (8th Cir. 1996); see also Austern v. Chicago Bd. Options Exch., Inc., 898 F.2d 882,

28  886 (2d Cir. 1999).  Like judicial immunity, the only exception to arbitral immunity's broad

1   scope is where there is a clear absence of jurisdiction (Intern. Medical Group, Inc. v.

2   American Arbitration, 312 F.3d 833, 843 (7th Cir. 2002), or where the arbitrator engages

3   in acts that clearly fall outside his or her arbitral capacity.  See Cort v. American

4   Arbitration Ass'n, 795 F. Supp. 970, 972-73 (N.D. Cal. 1992).

5          Arbitral immunity applies not just to an individual arbitrator, but also to

6   organizations that sponsor arbitrations, like the AAA here. In reaching this conclusion,

7   one California court notes that "a refusal to extend immunity to the sponsoring

8   organization would make the arbitrator's immunity illusory."  American Arbitration Ass'n

9   v. Superior Court, 8 Cal. App. 4th 1131, 1133 (1992). Consequently, "[a]s a practical

10  matter a grant of immunity to the arbitrator must be accompanied by a grant of the same

11  immunity to the AAA, an entity as indispensable to the arbitrator's job of arbitrating as

12  are the courts to the judge's job of judging."  Id. Significantly too, federal courts have

13  found likewise:  "[A]rbitral immunity is not limited to the individual arbitrators.  It has been

14  uniformly accepted that such immunity extends to arbitration associations such as the

15  AAA as well.  Cort, 795 F. Supp.at 971.  The immunity extended to the AAA as a

16  sponsoring organization includes not only situations where the arbitrator is or would be

17  immune, but also instances "where the organization has engaged in tasks such as

18  selecting an arbitrator, scheduling a hearing, giving notice of a hearing, and billing for

19  services."  Stasz v. Schwab, 121 Cal. App. 4th 420,433-34 (2004), citing Corey v. New

20  York Stock Exchange, 691 F.2d 1205, 1211 (6th Cir. 1982), New England Cleaning v.

21  American Arbitration Ass'n, 199 F.3d 542, 545 (1st Cir. 1999).  The scope of immunity is

22  so wide that this remains true even if the sponsoring organization has violated its own

23  internal rules.  See Olson v. Nat'l Ass'n of Security Dealers, 85 F.3d 381, 383 (8th Cir.

24  1996).

25          Applying these principles to the present case, immunity clearly applies.

26  Arbitration was contractually mandated by provisions contained within the RDA

27  agreements at issue, and as stated above, it was Shamitoff himself that initially

28  requested the matter be referred to arbitration.  Although Plaintiffs appear to argue that

1   there was no ongoing controversy because they had repurchased the RDAs, thereby

2   leaving nothing to arbitrate (and no jurisdiction to do so), that argument lacks merit.  As

3   set forth above, the gravamen of Jacquelynn Bird's complaint against Plaintiffs, as now

4   pursued by the Bankruptcy Trustee, rests not with title or possession to the allegedly

5   worthless RDAs, but rather to money damages in connection with those contracts.  That

6   controversy remains ongoing and Arbitrator Brown had jurisdiction to consider it.

7   Additionally, in setting up and billing for the arbitration, established precedent makes it

8   clear that the AAA enjoys immunity as well, despite Plaintiffs' claims that billing methods

9   were improper and that Defendants "failed to follow their own rules in proceeding forward

10  with the arbitration.  See id.; Corey v. New York Stock Exchange, 691 F.2d at 1211.

11          **B.  Mootness**

12          In addition to arguing arbitral immunity, Defendants also argue that while

13  arbitration proceedings remained pending when they instituted the instant motion on

14  February 5, 2014, by the time reply papers were filed and the motion was submitted,

15  arbitration had in fact been concluded.  Then, as the attachment (Exhibit R) to

16  Defendants' supplemental request for judicial notice attests, the arbitrator's award was

17  confirmed by Order of the Sacramento Superior Court, dated May 12, 2014.  According

18  to Defendants, completion of the arbitration proceedings means there is nothing left to

19  enjoin pursuant to Defendants' Complaint, which seeks preliminary and permanent

20  injunctive relief to prevent the arbitration from continuing.

21          The Court agrees.  Generally, a court's power to grant injunctive relief survives

22  the cessation of the allegedly illegal activity only where there is "some cognizable danger

23  of recurrent violation."  United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953).

24  Here, the arbitration has been both completed and the award confirmed.  The arbitration

25  process is therefore complete and Defendants make no argument to the contrary.

26  Plaintiffs' request for injunctive relief is consequently moot.

27          Other than the mooted injunctive relief, the only other relief requested by Plaintiff's

28  prayer as against Defendants AAA or Brown sounds in declaratory relief.  Plaintiffs

1   request a "declaration that  arbitrator Brown has no jurisdiction over Plaintiff[s]."  Pl s.'

2   Compl., 18: 12-13.  In addition to being substantively flawed in the context of the AAA's

3   ability to proceed with the arbitration, that request for declaratory relief has no

4   independent viability outside the confines of Plaintiffs' request for an injunction.

5   Declaratory relief is a procedural device for granting a remedy.  It does not in itself create

6   any substantive right or cause of action.  DTND Sierra Investments LLC v. Bank of New

7   York Mellon Trust Co., N.A., 958 F. Supp. 2d 738, 753 (W.D. Tex. 2013) (citing Aetna

8   Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240 (1937)).  Additionally,

9   even if Plaintiffs did have a surviving claim for declaratory relief, which the Court does

10  not believe they do, the Anti-Injunction Act, 29, U.S.C. § 2283, applies to requests for

11  declaratory judgment if those requests have the same effect as injunctive relief.

12  California v. Randtron, 284 F.3d 969, 975 (9th Cir. 2002).  Here, as discussed above,

13  the gravamen of the Complaint sounds solely in injunctive relief.  Consequently,

14  Plaintiffs' request for declaratory relief is insufficient, in the absence of any other viable

15  relief, to create a legally cognizable claim against Defendants AAA and Brown.

16

17                                   **CONCLUSION**

18

19         For all of the foregoing reasons, Defendants AAA and Brown's Motion to Dismiss

20  (ECF No. 9) is GRANTED.  Because the Court does not believe that the deficiencies of

21  Plaintiffs' claims against Defendants AAA and Robert Brown can be rectified through

22  amendment, no leave to amend will be permitted.

23         IT IS SO ORDERED.

24  Dated:  August 11, 2014

25

26

27  _____
    MORRISON C. ENGLAND, JR, CHIEF JUDGE
28  UNITED STATES DISTRICT COURT